14459

SCOTT v. BANKERS RESERVE LIFE INS. CO. OF OMAHA, NEB.

(190 S. E., 713)

May, 1935.

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Mr. C. T. Graydon,* for respondent, 

April 1, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This action, one for the recovery of both actual and punitive damages, was brought by plaintiff in July, 1934, against the appellant company and the Ohio National Life Insurance Company. The last-named defendant was made a party for the reason that, some time in 1933, it took over the assets and assumed the liabilities of its codefendant. The service on it, however, was held void on the ground that it was not doing business in South Carolina and was not amenable to process here.

The plaintiff alleged that the Bankers Reserve Life Insurance Company of Omaha, Neb., duly issued a policy of insurance on his life, and that he promptly paid all premiums due thereon through the duly authorized agent designated to collect them; that under the terms of this policy he was entitled to a cash surrender value of $42.00, for the payment of which he had made due and legal demand upon the insurer; but "that the defendants fraudulently breached that contract and that said breach was accompanied with fraudulent acts in that the defendants made a false claim that the plaintiff had not paid his premiums when in fact plaintiff had paid his premiums; in that the defendants took the policy of this plaintiff and held the same without authority of law; in that the defendants herein sent to the plaintiff a cash surrender slip which this plaintiff signed and returned, as required, with the policy, and that the defendants have retained possession of said papers and refused to give them up and refuse to pay said money."

The defendant, appellant here, admitted that it issued the policy in question on July 28, 1930, but denied that it had been guilty of any wrongful, fraudulent, or deceitful conduct in its relation to the insured. On the contrary, it alleged that it had performed all obligations assumed by it under the terms of the insurance contract; and that the plaintiff was estopped to claim any cash surrender value because of his failure to pay the quarterly premium due on April 28, 1933, which was necessary in order to meet the requirement of the policy, namely, that a cash surrender value would be available only after three full years' premiums had been paid.

The result of the trial of the case was favorable to the insured; the jury, to whom the issues were submitted, finding for the plaintiff $42.00 actual and $450.00 punitive damages.

A decision of the following questions will dispose of the appeal: (1) Did the Court err in refusing to direct a verdict for the defendant on the ground that there was no tes-

timony tending to show that the insured paid the premium on the policy due April 28, 1933? (2) In any event, was the trial Judge in error in not directing a verdict as to punitive damages on the ground that there was a total lack of evidence of a fraudulent breach of the contract accompanied by a fraudulent act?

As to the first question: While the policy contains a provision that all premiums would be payable at the home office of the company or to an authorized agent in exchange for a receipt signed by one of the several officers named and countersigned by the person authorized to receive the premium, Campbell, the defendant's agent through whom Scott secured the policy, testified that he always collected the premiums from the plaintiff in cash and sent his own check to the defendant in payment thereof, and that the receipt referred to in the policy was then issued by the company and mailed, not to him, but to the insured himself. The plaintiff's testimony as to the payment of the quarterly premium due April 28, 1933, was to the effect that he had a conversation about the matter with Campbell, some time between the 21st and 28th of April, and offered to pay him in city script, but that he refused to accept the script and that the witness then paid him the premium in cash. He also testified that in May, 1933, the company having failed to send him, as was its custom, the receipt, he went to see Campbell about it, who told him that the premium had been paid and that his policy was all right. But Campbell denied, when on the witness stand, that Scott ever paid him such premium, and stated that the conversation that occurred between them with reference to the city script, testified to by the insured, was some time in January of that year. There was undisputed testimony, however, that no script was issued by the city until April, 1933. In addition to that above recited, there was other evidence to the effect that Campbell, while in the office of an attorney in the City of Columbia, and in the presence of others, left the impression on the minds of those present, from statements

that he there made, that the insured had paid him this particular premium. But he later refused to sign an affidavit that this had been done.

In support of its position, the appellant also argues that even if Campbell was paid this premium, it could not have been paid him as an agent of the defendant for the reason that his contract as such with that company, as shown by the testimony, terminated on April 21, 1933, and that he never represented the Ohio National Life Insurance Company. While there was some evidence to that effect, the testimony of Campbell tended to show that he was still acting as agent of the defendant until in May, 1933. Furthermore, if Campbell's agency with the defendant was terminated prior to April 28, 1933, as the company claims, it does not appear that any notice was given to Scott, the insured, of such fact.

Under the testimony above detailed, as well as other evidence contained in the record, the question whether the insured paid, in accordance with the provisions of the policy, the quarterly premium due April 28, 1933, was undoubtedly an issue of fact for the jury.

As to the second question, counsel for appellant submit that even "if the evidence in this case establishes a cause of action, which we deny, it would be one only for the wrongful breach of contract, with no element of fraud, in which event only actual damages would be recoverable." The respondent contends, however, that the defendant was guilty of fraudulent acts in the following particulars, and that such acts are proved by the testimony:

"(1) That the company has attempted to lapse and cancel a policy upon which rights have accrued.

"(2) That the company has caused the plaintiff to make application for cash surrender value by furnishing him with proper papers, and that this action on their part was useless and fraudulent when they did not intend to pay.

"(3) That the company, by subterfuge, art and trickery, got possession of the policy and receipt of the plaintiff and refused to deliver them until after the suit was brought.

"(4) That the company had full knowledge of the payment of the premium through its agent and that its agent promised to rectify the situation and it failed and refused to do this."

A review of the testimony pertinent to this question would serve no useful purpose. It is sufficient to say that an examination of the record, which we have made with care, discloses that there was some evidence tending to prove the alleged fraudulent acts (1), (2), and (3) stated above, and which required the submission of the question of punitive damages to the jury. There was, therefore, no error on the part of the trial Judge in refusing to direct a verdict for the defendant on this issue.

The exceptions are overruled, and the judgment of the Court below is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.