14800

PRESSLEY v. INDUSTRIAL LIFE & HEALTH INS. CO.

(200 S. E., 731)

*Messrs. McEachin & Townsend,* for appellant,

*Messrs. A. C. Hinds* and *M. L. Meadors,* for respondent,

January 4, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

We venture to say that never before has there been presented to this Court an appeal which grew out of so small a subject-matter of litigation, yet which contained more confused issues of fact and more complicated grounds of appeal.

The plaintiff alleges in her complaint that the defendant issued two policies of insurance in her favor on the life of her grandson Clyde Parsons, who resided with her, whereby the defendant, in consideration of the payment to it by her of the sum of ten cents per week, on one policy, contracted to pay to plaintiff, on the death of the said Clyde Parsons, the sum of $46.00 provided that the said policy of insurance had been in effect for one year: one-fourth there-

of, to wit, $11.50, if the death of Clyde Parsons occurred within six months of the date of the policy. By the terms of the second policy, the insurance company agreed, in consideration of the weekly payment to it by her of the sum of five cents, to pay to her on the death of Clyde Parsons the sum of $25.00, if the said policy had been in effect for more than one year; or one-fourth thereof, to wit, $6.25, if the death of the said Clyde Parsons should occur within six months of the date of the policy.

That the said Clyde Parsons died within the period of six months from the date of the policies; that all the premiums had been paid on the policies and plaintiff became entitled to the amounts due on the policies, which were, in the aggregate, the sum of seventeen and 75/100 dollars.

That plaintiff is an uneducated colored woman who cannot read nor write her name, and is without business experience of any kind. That an agent of the defendant came to the plaintiff for the announced purpose of paying to her the amount to which she was entitled as beneficiary under the said policies; that he had in his hands a paper, which he represented to her was in the full amount of which she was entitled under the policies; reposing faith and confidence in the statements of the agent of the defendant, she was induced to surrender the policies to him and was further induced and persuaded to permit her minor son to execute a release, or releases, of the defendant from liability under the said policies, and to endorse in her name the check which defendant's agent said was for the full amount to which she was entitled. That the agent did not deliver the check to her, but then and there cashed it and gave her the sum of $11.50, as the full amount to which he said she was entitled.

That by reason of the fraudulent acts, misrepresentations, misconduct and deceit of the defendant, as alleged, and its willful, knowing, wanton, intentional, designed and fraudulent breach of its contracts, the plaintiff was cheated and

defrauded of her rights and her money, to her damage, actual and punitive, in the sum of fifteen hundred dollars.

For answer, the defendant admits Paragraphs 1, 2, and 3 of the complaint.

Further answering, and by way of affirmative defenses:

That Lugenia Smith, the mother of Clyde Smith, Jr., gave the said infant to Lula Pressley, the plaintiff, who thereupon insured the said infant under the name of Clyde Parsons with this defendant. That Lugenia Smith had previously insured said infant with this defendant. That Lula Pressley denied that she had a policy with this defendant on the said child within the limit allowed by its rules, as explained to her.

That when proof of the death of Clyde Smith, Jr., was made by Lugenia Smith, the amount of the five-cent policy was paid to her, and the amount of the ten-cent policy was paid to Lula Pressley, the grandmother. That upon proof of death made by Lugenia Smith and Lula Pressley, the company first discovered that Clyde Smith, Jr., and Clyde Parsons were one and the same person. That defendant explained to Lula Pressley that the rules of the company forbade the writing of more than a total of ten cents sick and accident insurance upon an infant under six years of age, and since the first policy taken in the sum of five cents sickness and accident insurance had been paid to Lugenia Smith, mother, the defendant company could pay to Lula Pressley only the proceeds of a five-cent sickness and accident policy upon the infant Clyde Smith, Jr., alias Clyde Parsons; that after again fully explaining the above rule of the company to the plaintiff, Lula Pressley, the company's agent paid to the plaintiff, Lula Pressley, five and 75/100 dollars as benefit under a five-cent sickness and accident policy on Clyde Smith, Jr., alias Clyde Parsons, and six and 25/100 dollars on the life policy upon said infant, and returned to the plaintiff, Lula Pressley, one and 25/100 dollars premiums

paid by her on the additional five-cent sickness and accident policy.

That the above sum was paid by check for twelve dollars and one and 25/100 dollars in cash. That these sums were received by plaintiff without protest, the plaintiff signing the usual release required by the company.

That before the payment of the above amount of insurance, the policies were turned over by Lula Pressley to an undertaker, who turned them over to the agent of the defendant upon the payment of twelve dollars and one and 25/100 dollars to Lula Pressley.

That defendant has proceeded in all respects in accordance with its rules and regulations.

The case was heard by Judge A. L. Gaston and a jury.

At the close of all the testimony the counsel for defendant moved:

1. To strike from the complaint all references to any fraudulent misrepresentations by defendant or its agents by which the policies were secured from the plaintiff.

2. For a directed verdict: First, on the ground that the undisputed testimony shows that the plaintiff was not the owner of the policies, but had assigned her interest in them to a third person. Second, on the ground that there is no evidence that these policies were procured from plaintiff by misrepresentation or fraud, the only thing left in the complaint is an alleged cause of action for failing to pay the amount due under the policies. Third, there being no evidence that the policies were received from her under any fraudulent representations there remains in the complaint only a charge that these releases and this check were signed under false representations. Fourth, that the undisputed testimony shows that she executed these releases, secured the check, received and accepted the benefits of the settlement, and has not paid nor tendered them back and hence cannot maintain this action.

The defendant added the further ground of motion for directed verdict, to wit, that the testimony shows that the life policy was paid in full.

The motions were refused.

Plaintiff's counsel moved to strike from the consideration of the jury the three affirmative defenses contained in the answer.

This motion was refused.

After arguments by counsel and the charge of the Court, the jury returned a verdict for plaintiff in the sum of Six and 25/100 ($6.25) Dollars actual damages and One Hundred ($100.00) Dollars punitive damages.

Thereupon counsel for defendant moved for a new trial and a directed verdict as to punitive damages upon these grounds:

1. Error of the Court in refusing to strike from the complaint all allegations of fraud relative to procuring the policy from the plaintiff.

2. Error in refusing defendant's request for a peremptory charge that no damages could be awarded on the ground of fraudulently procuring the policies from plaintiff because the uncontradicted evidence shows that the policies were not procured from plaintiff, no evidence that they were procured under fraudulent misrepresentations.

3. Error in refusing to direct a verdict on the ground that there being no evidence of any fraudulent procuring the policies, the only charge left in the complaint was in respect to procuring the releases, and the releases being a new contract, such charge of fraud was not pertinent to a fraudulent breach of a policy contract.

That his Honor erred in charging the jury that the burden of proof was on the defendant to show that the releases had been secured *bona fide,* When the plaintiff alleged in the complaint that the releases had been secured, such allegations being a part of the charge of fraud and that the burden

of establishing that the releases were fraudulently procured was on the plaintiff.

His Honor refused the motion.

Rarely has there been submitted to this Court the opportunity to decide between the play of brilliant Court and brilliant counsel as is found in this case. The amount involved is insignificant; the legal questions involved are not only interesting, but they are important.

It is due, then, as well to the learned Judge who heard this case as to the distinguished counsel who argued it, that the decision of his Honor in refusing the motion for new trial be reported here. He is a Judge learned in the administration of the law. The counsel who represented the litigants in this case are well established as practitioners of the law; brilliant and resourceful practitioners. It seems to us that this Court is entitled to hear the colloquy between these bright minds, and the conclusion of the final adjudication. Therefore we are reproducing here the order of Judge Gaston refusing the motion for new trial:

"The Court: Well, I think you raised about the same questions that were raised before. I think I will have to let the verdict stand.

"My recollection, of course the record will show, is that I charged the jury that the answer set up the defense of the releases, which was an affirmative defense, and therefore the burden of proof was on the defendant at the outset to either establish the execution of the releases or the validity of the releases. Whatever language I used of course I am bound by it, but that was the connection with which I made the charge to the jury and I think that was correct.

"As to the fraudulent intent and purpose, the plaintiff testified that the agent came to her and told her he was going to pay her all the money that was due her under the policies. She was either due under the policies, $17.75 or nothing. She says then the agent got her to sign the check

which he says was for the full amount, and then cashed it with $11.10 and told her that they didn't write insurance on babies.

"Now, the failure to pay the $17.75 was a breach of the contract, and the evidence tends to show that there was a fraudulent breach of the contract. That has nothing to do with the releases one way or the other. Either the contract was breached or it was not breached at the time of the settlement. If it was breached with fraudulent intent, that would be an element to sustain the tort action.

"Now, as to taking possession of the policies, that was based upon the theory that the defendant, by a fraudulent act, took the policies from the plaintiff. Well, now if the defendant, it turns out, didn't get possession of the policies from the plaintiff, but got them from the undertaker, Tony, without the plaintiff's knowledge or consent, and after fraudulently settling with the plaintiff for less than the amount of the policy contract, I don't see how it would help the defendant to say that Tony was holding it as security for a debt which the plaintiff herself owed. In other words, if the defendant had got the policies secretly or clandestinely, that would not help the defendant.

"There is a late case on that subject. I think it is *Scott v. Bankers Reserve Life Insurance Company of Omaha, Nebraska,* reported in 183 S. C., page 242, at page 244, 190 S. E., 713, where the policy was delivered to the company without proof of death, and the claim was that the company took it up by use of a fraudulent act, not intending to pay it later on. That has just been reported in the Supreme Court. But I think the test is whether there was a fraudulent act or not, whether the company takes up policies or the receipt books or any other evidence by which the plaintiff could maintain her suit in Court.

"So I think I have already covered all those points, and I will have to decline the motion."

From the judgment predicated on the verdict in this case, the defendant appeals. We are reproducing the exceptions just as they are contained in the record, because in our judgment they present practically the same questions that were heard and decided by the Court on the motions for directed verdict and new trial. Nearly all of these turn upon questions of fact. The exceptions are:

"I. That his Honor erred in refusing defendant's motion made at the close of all the testimony to strike from the complaint all allegations of fraud in reference to the plaintiff's surrendering the policies 'and other evidence of her said contracts,' made upon the ground that the testimony showed that no policies or 'other evidence of her said contract' were received from the plaintiff under any fraudulent representation.

"II. That his Honor erred in refusing defendant's motion made at the close of all the testimony to strike from the complaint all allegations of fraud in reference to the plaintiff's surrendering the policies 'and other evidence of her said contracts' when the uncontradicted testimony showed that the defendant did not receive any policies or evidence of contracts from the plaintiff under any kind of representation.

"III. That his Honor erred in refusing defendant's motion for a directed verdict as to punitive damages made upon the grounds:

"(a) That the undisputed testimony showed that the plaintiff had assigned her interests in the policies to a third party;

"(b) There being no evidence of the policies having been procured from the plaintiff under misrepresentation or fraud there was only left in the complaint an alleged cause of action for fraudulent failure to pay the amount due under the policy, which was not sufficient to sustain an action for fraudulent breach of contract;

"(c) That, there being no evidence of the policies having been received from her under any fraudulent representation, the only thing left in the complaint is the charge that these releases and this check were signed under a fraudulent representation, and that charge could only go as to the question of the validity of the releases, and, if the releases are void her cause of action is upon the contract for the remainder which she claims to be due under the ten cent (10¢) policy;

"(d) That the undisputed testimony shows she executed these releases, she received this check and had it endorsed at her request by her son; that she has accepted and received the benefits of the settlement, and she has never tendered them back to the company, and so cannot maintain an action for fraudulent breach of the contract.

"IV. That his Honor erred in refusing defendant's request for a peremptory instruction to the jury; that the undisputed testimony shows that no policies were received from her by an agent of the company on January 24th, and that such charge of fraud in the complaint cannot be considered by them in this case at all.

"V. That his Honor erred in refusing the defendant's motion for a directed verdict as to the life policy, made on the ground that the uncontradicted testimony showed that the policy was paid in full.

"VI. That his Honor erred in submitting to the jury question of the fraudulent breach of the life policy contract when payment of this policy had been made in full.

"VII. That his Honor erred in submitting to the jury the question of the fraudulent procuring of the policy when the testimony failed to show any fraudulent procuring of the policies.

"VIII. That his Honor erred in charging the jury 'But the burden of proof would be on the defendant to show she did execute a release fairly and squarely,' the error being that the burden was on the plaintiff to show that the releases were secured fraudulently.

"IX. That his Honor erred in charging the jury 'But they allege that they falsely and fraudulently told her they were going to pay her the full amount, or Seventeen and 75/100 ($17.75) Dollars, and that after she signed the receipt or check,' the error being that there was no testimony to support this charge.

"X. That his Honor erred in charging the jury 'Or if you determine that premiums not yet due on other policies of insurance were fraudulently deducted from the amount due the plaintiff against her express will and in spite of her statement that she intended to drop such other policies,' the error being that there was no allegation in the complaint or testimony at the trial to support this charge.

"XI. That the testimony was not sufficient to support a verdict for punitive damages in that there was no evidence of actionable fraud."

We think the defendant is not in position to criticize the plaintiff's statement in her complaint relative to the policies. It is true that she had handed them over to the undertaker for the purpose of paying the burial expenses of the boy. The agent of the defendant procured them from the undertaker, had them with him when he went to settle with the plaintiff, procured her release on them and took them away with him.

We are satisfied that the trial Judge properly tried and disposed of this case.

The judgment is affirmed.

Mr. Chief Justice Stabler and Mr. Justice Fishburne concur.

Mr. Justice Carter did not participate on account of illness.

Mr. Justice Baker (concurring) :

As stated in the main opinion, respondent is an illiterate negro woman, who is unable to read or write. The testimony for respondent discloses that appellant's agent came to the home of respondent on January 24, 1936, for the

specific purpose of paying to respondent such sum of money as she was entitled to receive as beneficiary under the terms and provisions of certain policies of insurance issued by appellant on the life of Clyde Parsons; that respondent had left said policies with an undertaker, and before coming to respondent's home, appellant's agent had procured from the undertaker these policies and had them in his possession at the time he went to respondent's for the purpose of settling with her as beneficiary of said policies; that the total amount due respondent as beneficiary under the terms and provisions of said policies of insurance was Seventeen and 75/100 ($17.75) Dollars; that appellant's agent advised respondent that he had come for the purpose of paying to her such money as was due her under the terms and provisions of said policies for the death of the insured, Clyde Parsons, and that he had a check with him for that amount; that respondent advised appellant's agent that she could neither read nor write, and that she could not cash a check that night; whereupon, appellant's agent told respondent that he could cash said check for her; that respondent had her minor son endorse said check and subscribe the other instruments which appellant's agent required, and when this was done, appellant's agent paid respondent the sum of Eleven and 10/100 ($11.10) Dollars; that respondent at that time emphatically protested the payment of Eleven and 10/100 ($11.10) Dollars, and contended that she was entitled to more money under the terms and provisions of said policies; that appellant's agent then told her "the company don't allow you to insure babies," and that Mr. Fly (a former agent of appellant) didn't know when he wrote the insurance; that appellant's agent left the home of respondent carrying with him the policies of insurance which he had procured from the undertaker.

Under the above-stated facts appellant's Exceptions 1, 2, 3, 4, 7 and 11 cannot be sustained. It will not be necessary to reproduce these exceptions inasmuch as they are fully set

forth in the main opinion. These exceptions charge the trial Judge with error in refusing to strike from the complaint all allegations of fraud in reference to plaintiff's surrendering the policies and other evidence of her said contracts, for that the testimony disclosed that said policies were not procured from respondent under any kind of fraudulent representation; error in refusing a request for a peremptory instruction that the undisputed testimony disclosed that said policies were not received from respondent; error in submitting to the jury the question of fraudulently procuring the policies from respondent and that the testimony was insufficient to show actionable fraud. It is true that these policies of insurance had been left by respondent with an undertaker, and that appellant's agent did not actually receive said policies from respondent, but procured them from the undertaker before going to respondent's home. It is also true that appellant's agent had these policies in his possession at the time he attempted to settle these claims with respondent. Whether or not appellant's agent, by procuring these policies from the undertaker before going to the home of respondent for the purpose of settling these claims, for an amount less than the face thereof, and then retaining said policies, amounted to a clandestine and fraudulent act, was a question for the jury to determine under all the facts and circumstances in this case.

As to Exceptions 5 and 6, appellant did not attempt to settle with respondent by piecemeal, but attempted to settle the claims under all of the policies at one time. In so doing its acts would be considered as a whole and under the testimony there was more than one reasonable inference to be drawn therefrom, and it was for the jury to say whether or not the whole transaction was permeated by fraud.

Appellant's eighth exception alleges error for that the trial Judge charged the jury that the burden of proof would be on the appellant to show that respondent executed a release fairly and squarely. It is a well-established precept of

law that the charge must be considered as a whole. The trial Judge explicitly charged the jury that the burden of proof was on the respondent to prove the material allegations of her complaint by the preponderance of the evidence and fully explained the meaning of "preponderance" of the testimony. Considering the charge as a whole, as must be done, the trial Judge committed no error.

Appellant's ninth and tenth exceptions cannot be sustained. If the trial Judge instructed the jury upon an issue as to which there was no evidence or if a mistake was made in stating issues to the jury, it was the duty of counsel for appellant to call the attention of the Court thereto. *Hancock v. National Council Junior Order United American Mechanics,* 180 S. C., 518, 186 S. E., 538. At no time did appellant's counsel object to the issues submitted by the trial Judge or call to the attention of the Court that instructions had been given on an issue unsupported by the testimony.

MR. JUSTICE FISHBURNE concurs.